JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

JAMI JOHNSON
New York State Bar # 4823373
Asst. Federal Public Defender
Attorney for Defendant
jami_johnson@fd.org

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>vs.<br><br>Jill Marie Jones,<br><br>        Defendant. | No.  CR-20-00634-PHX-DWL<br><br>DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER |

Defendant Jill Marie Jones ("Ms. Jones"), through undersigned counsel, hereby responds to the government's motion for a protective order (Doc. 21) (the "government's motion" or "Mot."). The government's motion should be denied for three separate reasons. First, the motion attempts to appropriate to the government power vested exclusively in the court to decide what information is protected from public disclosure by vesting in the government the power to determine unilaterally and in its sole discretion which documents may lead to the theoretical harms it describes. Second, because the motion fails to describe with sufficient particularly the documents it seeks to protect and fails to articulate with specificity the harms that arise from disclosure, the motion fails to establish good cause why a protective order should issue. Third, the proposed protective order intrudes impermissibly

on Ms. Jones' First Amendment rights by seeking to restrict her use and dissemination of information already in her possession, custody, or control prior to any disclosures at all by the government, and thus constitutes an impermissible "prior restraint" on her speech activity.

Should the government believe that any materials it intends to produce in discovery should be subject to protection by this Court, it should file those documents under seal with the Court and clearly articulate with respect to each document or category of documents what specific harm it fears might arise from disclosure so that the Court can perform the necessary balancing test to determine whether protection is warranted. Moreover, to the extent that any document over which the government seeks protection constitutes information already in the possession, custody, or control of Ms. Jones, *e.g.* information obtained from Ms. Jones herself, or constitutes information previously voluntarily disclosed by the government to Ms. Jones in the course of its solicitation of her to perform illegal acts, the government should be required to articulate with respect to each of those documents why a prior restraint on Ms. Jones's First Amendment rights is warranted with respect to those documents.

**I.     Argument**

"In the Ninth Circuit and subject to certain exceptions, documents exchanged in discovery are presumptively public in nature." *United States v. Arredondo*, No. CR-12-1055-PHX-FJM, 2012 WL 1946955, at *1 (D. Ariz. May 30, 2012) (citing *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) ("It is well established that the fruits of pretrial discovery are, in the absence of a court order to the contrary, presumptively public.")). Generally, such a

presumption may be overcome only upon showing of "good cause." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

In the Ninth Circuit, to prevent access to unfiled discovery materials, "[a] party asserting good cause bears the burden, for each document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Id.* at 1130 (citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [relevant test for deeming materials protected under the Federal Rules of Civil Procedure]." *Beckman Ind., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992); *see also United States v. Bulger*, 283 F.R.D. 46, 58 (D. Mass. 2012) ("Simply referring to broad swaths of categories of material is not sufficient.").

Courts addressing requests for protective orders proceed in two steps. First, they determine whether "particularized harm will result from disclosure of information to the public." *In re Roman Catholic Archbishop of Portland, Or.*, 661 F.3d 417, 424 (9th Cir. 2011). If this step is satisfied, courts then "balance the public and private interests to decide whether maintaining a protective order is necessary." *Id.* (brackets and quotation marks omitted). In balancing these interests, courts look to the following seven factors:

(1) whether disclosure will violate any privacy interests;

(2) whether the information being sought is for a legitimate purpose or for an improper purpose;

(3) whether disclosure of the information will cause a party embarrassment;

(4) whether confidentiality is being sought over information important to public health and safety;

3

(5) whether the sharing of information among litigants will promote fairness and efficiency;

(6) whether a party benefiting from the order of confidentiality is a public entity or official; and

(7) whether the case involves issues important to the public.

*Id.* at 424 n.5 (adopting the seven-factor test developed by the Third Circuit in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)).

Where, as here, a protective order seeks to limit a party's use of information already in his possession, custody, or control, it constitutes a "judicial order[ ] *forbidding* certain communications [and] issued in advance of the time that such communications [would] occur," *i.e.*, a prior restraint on speech. *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original). A court's entry of a prior restraint on speech is "one of the most extraordinary remedies known to our jurisprudence" and is thus subject to strict scrutiny. *Nebraska Press Ass'n v. Stuart*, 427 U.S. at 562. Because of the extraordinary nature of the remedy, prior restraints are only warranted where the government establishes that "(1) the activity restrained poses either a clear and present danger or a serious imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available." *Levine v. U.S. Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir. 1985) (internal citations omitted).

### A. The Government Fails to Establish why it, Rather than the Court Should Decide Which Materials Are Subject to Protection.

As an initial matter, Ms. Jones does not dispute that there may be discovery materials in this case that may reasonably be subject to some sort of protection on their use or dissemination. The government's motion asserts however that because

4

there may be some unspecified, ill-defined discovery materials properly subject to some protection by this Court that the government should be allowed unilaterally and in its sole discretion to assert protection over any and all materials it may produce and to require that such information be filed only under seal. (Proposed Protective Order at ¶ 7.) The motion moreover asserts that the government should also unilaterally and in its sole discretion have authority which of these materials to further designate as "Sensitive Information," subject to an even higher level of protection than ordinary discovery materials. This proposal is contrary to law.

The government's proposal violates the well-established principle that "[i]t is the court, not the Government, that has discretion to seal a judicial record." *Bismullah v. Gates*, 501 F.3d 178, 188 (D.C. Cir. 2007). For this reason, courts have rejected protective orders virtually identical to the one proposed by the government in this case. For example, in *Bismullah v. Gates*, the government proposed to designate as "protected" information it described in general terms as "information 'reasonably expected to increase the threat of injury or harm to any person'" as well as "information already designated by the Government to be 'For Official Use Only' or 'Law Enforcement Sensitive.'" *Id.* Under the proposal, material so-designated would be required to be kept "confidential" by defense counsel and "file[d] under seal." *Id.* The D.C. Circuit rejected the government's proposal and required instead that the government follow the procedure advocated by Ms. Jones here, namely that the government "file with the court [ ] information the Government believe[d] should be 'protected' [and] give the court a basis for withholding it from public view. *Id.*

Similarly, in *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008), the D.C. Circuit rejected a motion by the government that the government be permitted to designate

5

as "protected," *inter alia*, "any sensitive law enforcement information" on purported grounds that public disclosure "could harm the Government's ongoing law enforcement activities . . . ." *Parhat v. Gates*, 532 F.3d. 834, 852 (D.C. Cir. 2008). As in *Bismullah*, the court instead required the government to follow the procedure proposed by Ms. Jones in this case, namely that the government file the materials that it proposed to protect with the court, clearly marking the material it sought to protect, "accompanied by pleadings specifically explaining why protected status is required for the information that has been marked" and that opposing counsel be afforded the opportunity to respond before the court ruled. *Id.* at 853.

  Cases cited by the government are not to the contrary. For example, in *United States v. Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013), the court issued a protective order with respect to materials that might reveal law enforcement sources and methods only after the government had produced the materials in question and then had submitted *ex parte* and for *in camera review* a letter outlining with specificity the harm that it believed would arise from failure to protect those documents. *Id*. at 531. In *United States v. Parnas*, 738 F.2d 278, the Eighth Circuit held that it was not an abuse of discretion for the district court to have granted protection to a single, clearly defined document that provided technical specifications for an investigatory device used by the government. *Id.* at 285–86. In both cases, the specific documents over which the government sought protection were in front of the Court for its review. Neither case supports the proposition that the government may unilaterally assert that because disclosure of some vaguely described documents might bring about some vaguely defined harm, the government should be vested with the

authority to restrict in the first instance how a defendant may use any and all discovery materials.

As noted above, Ms. Jones does not contest that there may exist in this case certain sensitive information that warrants protection from public disclosure. She objects however to vesting in the government, rather than the Court, the authority to make such a determination in the first instance.

### B. The Government Has Not Shown "Good Cause" for the Protective Order.

The government seeks a blanket protective order in this case covering all discovery materials under the theory that disclosure of these ill-defined materials "could adversely affect national security, law enforcement interests and the privacy interests of third parties." Mot. at 7. It also seek protection over Ms. Jones's own alleged past communications with individuals not known to her at the time to be government agents. *Id.* The government asserts that providing this discovery without a protective order "could adversely affect national security, law enforcement interests and the privacy interests of third parties." *Id.*

Such generalized assertions and naked speculation are insufficient to support a finding of "good cause." *Beckman Ind., Inc. v. Int'l Ins. Co.*, 966 F.2d at 476 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [relevant test for deeming materials protected under the Federal Rules of Civil Procedure]."); *see also Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001) (To establish good cause, the party that seeks a protective order "must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements.") Rather, "good cause" is established when it is specifically

7

demonstrated that disclosure will cause a "specific prejudice or harm." *Phillips ex. rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002).

The government's motion falls far short of this standard. It provides no basis for this Court to find that this theoretical risk of harm that the government believes may occur is sufficient to overcome the general presumption in this Circuit that discovery be public. *San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d at 1103. This is particularly true in light of the fact that the government has not provided to the Court the documents over which it seeking protection so that the Court may assess for itself the possible risks of disclosure. Rather, it simply asks the Court to defer to the government's characterizations of the material, of its significance, and of the corresponding risks of disclosure, thereby vesting in the government, rather than in the Court, the power to make such determinations in the first instance. The Court should decline this invitation and find that the government has not met its burden of showing "good cause."

### C. To the Extent the Court Finds "Good Cause," the Protective Order is Nevertheless Unjustified because the Public Interests Outweigh any Private Interests that Might Exist.

Had the government alleged "specific prejudice or harm" that might result from disclosure of discovery, which it has not, the next step would be to "balance the public and private interests to decide whether maintaining a protective order is necessary." *In re Roman Catholic*, 661 F.3d at 424. Even where a court finds "good cause," the court must take care to ensure that the protection afforded is no broader than necessary to accomplish the goals and "should be sensitive to less restrictive alternatives available to achieve this goal." *United States v. Lindh*, 198 F. Supp. 739, 742 (E.D. Va. 2002). The seven-factor test used to perform this balancing

strongly favors disclosure over secrecy in this case, and the government has failed to establish that its proposed order is the least restrictive alternative available.

### 1. Issuance of the Proposed Protective Order Unreasonably Limits Ms. Jones' Ability to Defend Herself.

Factors two and five include "(2) whether the information being sought is for a legitimate purpose or for a proper purpose," and "(5) whether the sharing of information among litigants will promote fairness and efficiency." In this case, the information is being sought for the paramount interest of providing Ms. Jones with materials relevant to her defense in a case that carries a potentially significant criminal penalty. "The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683 (1986). Accordingly, courts have acknowledged that they must be "particularly sensitive" to the extent to which a protective order hinders a defendant's efforts to defend himself. *United States v. Smith*, 958 F. Supp. 2d at 544.

The proposed protective order in this case purports to prohibit the defense team from discussing any of the material involving the OCE—including but not limited to information already known to Ms. Jones because it was voluntarily disclosed to her by the OCE while the OCE was soliciting her for criminal activity—with anyone other than the defense team and its retained experts or investigators. Proposed Protective Order at ¶ 11(b). Ms. Jones would therefore be prohibited by the terms of the protective order from discussing material related to the OCE with potential witnesses, or from showing her own communications to third parties who may also have had communications with the OCE and who might be able to place such communications in proper context.

9

The proposed order therefore unfairly limits Ms. Jones's ability to defend herself.

### 2. The Case Involves Issues Important to the Public Interest.

This case has already generated and is likely to continue to generate substantial public interest, including but not limited to newspaper and television coverage. The Department of Justice itself contributed to the public interest in this case by issuing a press release contemporaneous with the arrest of Ms. Jones. *See* Press Release, Dept. of Justice, Arizona Woman Arrested for Attempting to Provide Material Support to Al Qaeda Public (Jul. 24, 2020), *available at* https://www.justice.gov/opa/pr/arizona-woman-arrested-attempting-provide-material-support-al-qaeda (last accessed Nov. 12, 2020). This case therefore qualifies as an issue important to the public interest.

### 3. The Only Party Benefitting From Secrecy Is the Government.

The protective order in this case is being sought purely for the benefit of the government, which is a public entity. As such, this factor weights against entry of a protective order.

### 4. The Government Has Failed to Show that Disclosure Will Violate the Privacy Interest of any Third Party.

The government claims, without argument or factual, that disclosure of the materials "could adversely affect . . . the privacy interests of third parties" (Mot. at 7) but fails to identify a single third party with a relevant privacy interest or to provide any explanation for how disclosure of the discovery materials would adversely affect that interest. This Court therefore lacks a basis for finding that this factor outweighs the interests in favor of disclosure.

### 5. The Government Has Failed to Show that the Protected Information is Important to Public Health and Safety.

The government has also failed to make any showing from which the Court may conduct the balancing test necessary to determine that public health and safety outweighs all other factors. Without a specific articulation of the nature of the harm that might befall some relevant interest, this Court lacks a basis for finding that the risk to public health and safety from disclosure of the information outweighs the benefits of disclosure.

### D. Entry of the Protective Order Would Place Unconstitutional Prior Restrains on Ms. Jones' First Amendment Rights.

As noted by the government, this case arose when undercover FBI employees began communicating with Ms. Jones in order to solicit her participation in unlawful activities. Mot. at 2. Much of the material over which the government seeks protection appears to consist of material generated by Ms. Jones herself during the course of her communications with the undercover agents. Certain other information, such as screen names and aliases used by the undercover agents in their communications with Ms. Jones, are already known to Ms. Jones and were known to her prior to her arrest.

Despite that such information is already fully known to Ms. Jones and already within her possession, custody, and control, and indeed despite that much of the information appears to have been generated by Ms. Jones herself, the government asks this Court to now bar Ms. Jones from using or disseminating the material in ways other than as requested by the government. Such an order would constitute a prior restraint on Ms. Jones's First Amendment rights insofar as it would constitute a "judicial order[ ] *forbidding* certain communications [and]

11

issued in advance of the time that such communications [would] occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original).

A court's entry of a prior restraint on speech is "one of the most extraordinary remedies known to our jurisprudence" and is thus subject to strict scrutiny. *Nebraska Press Ass'n v. Stuart*, 427 U.S. at 562. Because of the extraordinary nature of the remedy, prior restraints are only warranted where the government establishes that "(1) the activity restrained poses either a clear and present danger or a serious imminent threat to a protected competing interest; (2) the order is narrowly drawn; and (3) less restrictive alternatives are not available." *Levine v. U.S. Dist. Court for Cent. Dist.*, 764 F.2d 590, 595 (9th Cir. 1985) (internal citations omitted).

The government has not met this high bar for enjoining Ms. Jones' free speech rights. Specifically, it has not identified a "clear and present danger or serious imminent threat" that would result from disclosure of the information. Rather, it merely speculates that disclosure "could adversely affect national security, law enforcement interests and the privacy interests of third parties." (Mot. at 7.) These speculative concerns do not rise to the level of a "clear and present danger" such that it justifies the "extraordinary remedy" that the government seeks. The proposed protective order is moreover not narrowly drawn, nor has the government articulated why it is the least restrictive alternative available to accomplish its purported goals.

Because the government has failed to demonstrate why a prior restraint on her speech is appropriate in this case, this Court should deny the government's motion.

## II. Conclusion

For the reasons set forth above, the government's motion should be denied.

Respectfully submitted:   November 12, 2020.

JON M. SANDS
Federal Public Defender

*s/Jami Johnson*
JAMI JOHNSON
Asst. Federal Public Defender