MICHAEL BAILEY
United States Attorney
District of Arizona

LISA E. JENNIS
DAVID A. PIMSNER
Assistant U.S. Attorney
Arizona State Bar No. 007480
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: lisa.jennis@usdoj.gov
Email: david.pimsner@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>Jill Marie Jones,<br><br>  Defendant. | CR-20-00634-PHX-DWL (MHM)<br><br>**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO MOTION FOR PROTECTIVE ORDER PURSUANT TO FED. R. CRIM. P. 16** |

The United States of America, by and through undersigned counsel, respectfully submits this reply brief in support of its motion for a protective order.

In light of the Defendant's objections to all discovery being subject to a protective order, the government is submitting a Proposed Modified Protective Order (See Exhibit 1), limiting the protective order to one specific category of discovery, that being the redacted online communications and any redacted serials documenting the online communications between Defendant, Jill Marie Jones, and the FBI Online Covert Employees (OCEs).[1] A protective order is sought to protect from public disclosure any information relating to the identification of the OCEs or techniques used by OCEs in national security investigations.

---

[1] This disclosure will represent a substantial percentage of the discovery and goes to the heart of the allegations set forth in the Indictment.

The OCEs are involved in other online investigations involving national security. As a result, the discovery materials include highly sensitive information, the unrestricted dissemination of which could adversely affect national security, law enforcement interests and the privacy interests of third parties. If any additional disclosures require protection, the government will seek the appropriate level of protection in a future filing.[2]

## BACKGROUND

The government's motion for a protective order was filed on November 2, 2020 Doc. 21). The proposed protective order described three categories of material. <u>First</u>, at paragraph 1, and 5 the proposed modified protective order would require that all of the OCE-Related Discovery Information produced by the United States be used solely in connection with this criminal case and for no other purpose. The proposed modified protective order does not prevent defense counsel from using the OCE-Related Discovery Information to investigate or prepare for its case or from providing the information to outside experts and investigators, subject to the protective order. <u>Second</u>, at paragraph 16, either party may seek modification of this Order upon a showing of good cause. <u>Third</u>, paragraphs 13 and 14, at the conclusion of all litigation in this case, any copies of OCE-Related Discovery Information must be returned to defense counsel by members of the defense team, and any outside experts of investigators. Defense counsel can maintain the discovery, consistent with their ethical obligation pursuant to Arizona Rules of Professional Conduct ER 1.16. At the conclusion of the retention period, defense counsel shall return the OCE-Related Discovery Information to the government or destroy the OCE-Related Discovery Information, with notice to the government.

The defendant filed a response in opposition to the government's motion for a protective order on November 12, 2020 (Doc. 23). The defendant noted three objections

---

[2] Because, in its reply, the government is requesting that a modified protective order be issued as it applies to a limited category of discovery, the government does not oppose the defendant from filing a Sur Reply.

- 2 -

to the categories described above. <u>First</u>, the defendant objects to the government's motion on the grounds that "the motion attempts to appropriate to the government power vested exclusively in the court to decide what information is protected from public disclosure by vesting in the government the power to determine unilaterally and in its sole discretion which documents may lead to the theoretical harms it describes." (*Id*. at 1). <u>Second</u>, the defendant stated because the motion fails to describe with sufficient particularly the documents it seeks to protect and fails to articulate with specificity the harms that arise from disclosure, the motion fails to establish good cause why a protective order should issue. (*Id*. at 1). <u>Third</u>, the defendant stated "the proposed protective order intrudes impermissibly on Ms. Jones' First Amendment rights by seeking to restrict her use and dissemination of information already in her possession, custody, or control prior to any disclosures at all by the government, and thus constitutes an impermissible "prior restraint" on her speech activity. (*Id*. at 2-3). However, the defendant did acknowledge "As an initial matter, Ms. Jones does not dispute that there may be discovery materials in this case that may reasonably be subject to some sort of protection on their use or dissemination." (*Id*. at 4).

The government anticipates producing the following materials to the defendant's counsel in its supplemental disclosure of discovery:

- All OCE-Related Discovery Information relating to redacted online communications and any redacted serials documenting the online communications between Defendant, Jill Marie Jones, and the FBI OCEs.

## **ARGUMENT**

The government is seeking a protective order under Fed. R. Civ. P. 16(d)(1), which states: "[a]t any time the court may, for good cause deny, restrict, or defer discovery or inspection or grant other appropriate relief." *See* Fed. R. Crim. P. 16(d)(1). Where the government is seeking a protective order, it has the burden of showing good cause. *See United States v. Isa*, 413 F.2d 244, 248 (7th Cir. 1969). In doing so, a court

should seek to ensure that disclosure of discovery materials to a defendant "involve[s] a minimum hazard to others." *Alderman v. United States*, 394 U.S. 165, 185 (1969). Additionally, a court must consider whether the imposition of the protective order would prejudice the defendant. *See, e.g., United States v. Davis*, 809 F.2d 1194, 1120 (6th Cir. 1987) (requiring defendant to "demonstrate substantial prejudice" from a protective order). "Protective orders in criminal cases are not uncommon," and this Court has "vast" discretion to grant protective orders, and should exercise that discretion to "assure that a defendant's right to a fair trial [is] not overridden by the confidentiality and privacy interests of others." *United States v. O'Keefe*, No. 06-0249 (PLF), 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (citing Charles Allan Wright, 2 Federal Practice and Procedure § 258 (3d ed. 2000). Indeed, "the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwanted disclosure of the materials which they may be entitled to inspect." *Alderman*, 394 U.S. at 185.

In the context of a criminal case, courts have established a balancing test to evaluate whether the court should exercise its discretion to grant a protective order. When examining a request for a protective order under Rule 16(d)(1), the court should consider: (1) whether dissemination of the discovery materials without a protective order would pose a hazard to others; (2) whether the defendant would be prejudiced by the protective order; and (3) whether the public's interest outweighs the harm the disclosure would cause. *United States v. Smith*, 985 F. Supp. 2d 506, 523-24 (S.D.N.Y. 2013); *accord United States v. Carriles*, 654 F. Supp. 2d 557, 566 (W.D. Tex. 2009).

**I.      There is Good Cause for the Modified Protective Order**

The proposed modified protective order will protect sensitive information, and also "expedite the flow of discovery in [a] case[] involving a large amount of sensitive information." *United States v. Johnson*, 314 F. Supp. 3d 248, 252 (D.D.C. 2018) (internal quotations and citations omitted). Indeed, protective orders covering all materials produced to defense counsel are appropriate in certain circumstances. *See*

*Peloquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993) (noting that protective orders range in type from blanket orders in which everything is tentatively protected until otherwise ordered, to narrow orders protecting against disclosure of limited and specific kinds of information). Courts have routinely approved protective orders tentatively covering all discovery produced in a proceeding. *See, e.g., United States v. Lewis*, No. 16-300002-MGM, 2016 WL 778361, at *1-2 (D. Mass. Feb. 26, 2016) (approving Government's "blanket" protective order where "[t]he grand jury has found probable cause to believe that the defendants engaged in sex trafficking and made extortionate threats against individuals whom they trafficked for sex," and therefore "the Government has persuasively identified a risk to the vulnerable victims in this case, who are also potential witnesses, if confidentially is not maintained…."); *Smith*, 985 F. Supp. 2d at 526 (approving "blanket" protective order where the "interests of third parties as justifying non-disclosure of certain materials speak to the unfairness of being stigmatized from sensationalized and potentially out-of- context insinuations of wrongdoing…."); *United States v. Worthen*, No. 17-cr-175, 2017 WL 3086062 (N.D. Cal. July 20, 2017) ("The Court has already recognized that the blanket Protective Order, to which all of the defendants stipulated, is appropriate … '[g]iven the volume of sensitive material and the fact that it is so enmeshed with non-sensitive material, the protective order … is both practical and appropriate.'") (internal citation omitted). The government is no longer seeking a blanket protective order, only one protecting a sensitive category of discovery.

Rule 16's Advisory Committee Notes state that "the protection of information vital to the national security" is another appropriate consideration in a Rule 16(d)(1) motion. Rule 16 Adv. Comm. Notes, Sub. (e) (1966); *see United States v. Roviaro*, 353 U.S. 53 (1957) ("'[G]ood cause' includes the protection of information vital to the national security."); *see also United States v. Hanna*, 661 F.3d 271, 294 (6th Cir. 2011). Courts have held that there is good cause to enter a protective order under Fed. R. Crim. P. 16(d) where the discovery at issue reveals details, sources, and methods of ongoing law enforcement investigations. *See*, *e.g.*, *United States v. Panas*, 738 F.2d 278, 285-86 (8th

Cir. 1984) (affirming district court's granting of a protective order to prevent the discovery of technical data of a specific transmitting device used by the FBI in an undercover operation because the device "is used in both criminal investigations and counterintelligence efforts and it was feared that disclosure would jeopardize national security and the safety of undercover agents").

There are compelling national security reasons to adopt the protective measures proposed by the government. (See Addendum A, Section I, filed under seal.)[3]

Courts have also determined protective orders to be appropriate where the discovery subjected to protection contains information that could reasonably subject a witness to physical risk of harm. *See*, *e.g.*, Fed. R. Crim. P 16, Advisory Committee Notes to the 1974 Amendments ("Although the rule does not attempt to indicate when a protective order should be entered, it is obvious that one would be appropriate where there is reason to believe that a witness would be subject to physical or economic harm if his identity is revealed"); *United States v. Fort*, 472 F.3d 1106, 1131 (9th Cir. 2007) (noting that "[t]he Rules Advisory Committee specifically designed Rule 16(d)(1) to provide a mechanism to protect witness safety, and to grant considerable discretion to the district court in drafting orders under that rule"); *see also United States v. Nava-Salazar*, 30 F.3d 788, 800-01 (7th Cir. 1994) ("[T]he government's delay in disclosing the additional incriminating evidence it had concerning [the defendant] was a justifiable, necessary and proper step" since disclosure "could have threatened the life and safety of a number of persons involved, including the undercover DEA agents and their informants."); *United States v. Barbeito*, No. CR.A. 2:09-CR-00222, 2009 WL 3645063, at *1 (S.D.W. Va. Oct. 30, 2009) ("It is appropriate, however, to employ Rule 16(d) protective orders to curtail the public dissemination of sensitive discovery materials that

---

[3] The government can provide a declaration from the FBI's Counterterrorism Division on why public disclosure of discovery would lead to the identification of FBI online covert employees and the harm to national security that disclosure would cause, if such a declaration would be helpful to the court.

may endanger witnesses or informants.") (citing *United States v. Rivera*, 153 Fed. Appx 758 (2d Cir. 2005)); *United States v. Fine*, 413 F.Supp. 740, 744 (W.D. Wis. 1976)).

The personal safety of the FBI OCEs and their families is always an imperative concern and public dissemination of the discovery in this case would put the personal safety of those individuals at risk. (See Addendum A, Section II, filed under seal.)[4]

The need for the proposed protective order is particularly clear in the unique context of this case, including the defendant's interest in Al-Qaeda and her spread of its propaganda puts any FBI employees involved in the investigation at a particular risk. For example, an FBI UC who participated in a national security investigation had his life threatened by the defendant in the resultant criminal case. *See United States v. Daoud*, 755 F.3d 479, 480 (7th Cir.), *supplemented*, 761 F.3d 678 (7th Cir. 2014) (after learning his accomplice in the alleged bombing was a UC, Daoud allegedly attempted to hire another individual to murder the UC). Moreover, in January 2015, ISIS re-released a propaganda video urging the murder of intelligence officers, police officers, soldiers, and civilians. The video urged sympathizers to "[s]trike their police, security and intelligence members[,] as well as their treacherous agents."

Defendant objects to the method for determining which documents should be covered by the order (Doc. 23, at 1-2). Specifically, defendant requests a procedure by which the government submits the documents to the court in the first instance and "articulate with respect to each document or category of documents what specific harm it fears might arise." (Doc. 23, at 2.) The government has accomplished this task by identifying the harms herein with respect to the category of documents relating to the OCES' communications.

The extra step proposed by defendant – that the Court review the documents first – is unnecessary. The government has addressed the need for this by limiting the requested

---

[4] Same as Footnote 3.

order to the category of documents and materials related to OCE communications and related reports that may lead to the identification or techniques used by the OCEs in national security investigations. If defendant disagrees that the document is properly categorized as such, or that despite that categorization other compelling concerns demand that the item be broadly disclosed, she may seek such relief from the Court. The process requested by defendant is cumbersome, wastes judicial resources, will result in further delays, and will not protect her rights any more securely than the more streamlined method proposed by the government.

Defendant also argues that the United States' proposed protective order "violates the well-established principle that '[i]t is the court, not the Government, that has discretion to seal a judicial record.'" (Doc. 23, at 5.) In doing so, defendant argues that two cases from the D.C. Circuit Court of Appeals — *Bismullah v. Gates*, 501 F.3d 178 (D.C. Cir. 2007) *overruled on other grounds* 551 F.3d 1068 (D.C. Cir. 2009), and *Parhat v. Gates*, 532 F.3d 834 (D.C. Cir. 2008) — mandate a process in which documents cannot be subject to a protective order until the United States has attached each of the specific documents to a pleading and allowed the Court, in each instance, to make an individualized ruling as to each document or category. Neither *Bismullah* nor *Parhat* demand such a process. Moreover, such a process delays disclosure and creates an unnecessary burden on the Court's and the parties' resources.

These cases are unpersuasive here. In both *Bismullah* and *Parhat*, the petitioners were detained at Guantanamo Bay and the disclosures at issue were specifically in the military tribunal context. Additionally, although the D.C. Circuit Court of Appeals found the basis for the government's proposed protective order in each case to be vague, generic, and lacking, this finding did not create a requirement that the United States submit each individual document to the court in the first instance. The government's request for a protective order in defendant's case is clearly distinguishable from the requests in the *Bismullah* and *Parhat* cases.

First, in those cases, the United States' protective orders sought to keep documents

from the public in the D.C. Circuit case that were part of the record necessary for appeal and the basis for the appellate court's review. In the case before this Court, the documents the United States currently intends to disclose are related to OCE communications that may lead to the identification or techniques used by the OCEs.

Second, in both *Bismullah* and *Parhat*, the Court explained that, although there was nothing wrong with the government seeking to protect certain discovery from the public, the United States needed to tailor the requested protection to the specific information at issue, not just make a generic request. In fact, in *Parhat*, the Court emphasized that the United States had filed the same, identical motion for a protective order in over 100 similar pending cases. *Id.* at 852.

Here, the United States has provided the Court with specific information for which it is seeking a protective order and has limited the protective order to one category of documents. (See Addendum A, filed under seal). The United States' explanation is substantially different than that in *Bismullah* or *Parhat*. Here, the United States will provide a limited category of discovery to be subject to the modified protective order.

The cases relied upon by defendant are inapplicable here and do not demand a review by the court in the first instance. Further, because the United States has provided the Court with a sufficient basis for withholding certain documents from public view that is specific to defendant's case, the concern present in *Bismullah* and *Parhat* regarding "generic assertions" proffered by the United States is not present in this case.

Defendant unpersuasively relies on a two-step, seven-factor test in support of its argument that the government must first show good cause in order to identify materials as protected by the order. (Doc. 23, at 3.) Her reliance on the factors discussed in *In re Roman Catholic Archbishop of Portland, Or.*, 661 F.3d 417, 424 (9th Cir. 2011) is misplaced because they apply only to a court's consideration of a continuation of a protective order. ("A court considering a motion for a continuation of the protective order must proceed in two steps.") Further, in that case, the Ninth Circuit was faced with determining whether allegations made during the discovery phase of a bankruptcy case that

third-party priests had sexually abused children could be publicly disclosed. *Id*. at 420. The Court ultimately agreed with the district court that the "public's serious safety concerns cannot be addressed" if the name of one of the accused priests was withheld. *Id*. at 433. The Court's focus was the extension of a protective order while considering the privacy concerns of third-parties who posed a public threat. Here, the issue is a new protective order relating to an ongoing criminal investigation, where the scope of protection has been agreed upon.

Defendant further conflates the issue here – a protective order for sensitive information in national security investigations – with the application of Rule 26 of the Federal Rules of Civil Procedure. In both *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003), and *Beckman Ind., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992), the Ninth Circuit analyzed protective orders issued pursuant to the Rules of Civil Procedure. The holdings there are inapposite as those rules do not apply to a criminal proceeding. Nevertheless, the government has explained the specific harm that will occur from the broad release of a limited set of documents.

Even if this Court finds that the seven-factor test, or the other good cause arguments urged by defendant, applies to materials related to OCE communications in a national security investigation, the government has satisfied its burden. The government identified the harms from any information relating to the identification or techniques used by OCEs in national security investigations and therefore, the public has no interest in such material.

Additionally, defendant argues, (Doc. 23, at 9) that limitations in the proposed order on the use of the documents impacts her ability to put forth a defense. The requested proposed order permits broad use of the materials among the members of his defense team and their experts. Moreover, it allows the defense to use the information to investigate or prepare for its case. Any disclosure of the actual documents or a full summary of their contents to a third-party place risk to OCEs and national security investigations. The defense is not hampered by this provision.

## II. There will be No Prejudice to the Defendant or Undue Restriction on Public Access

The defendant will suffer no prejudice if the Court issues the proposed modified protective order. As set forth in the proposed order, the defendant and defense counsel may use the discovery for case and trial-related purposes, and may generally disclose its contents to authorized persons, such as persons employed to assist in the defense and their experts. Moreover, the material can be used to investigate, or prepare for its case. Special limitations on the use of sensitive information including personal identifying information (such as the requirement that such materials be filed under seal) are reasonable and will not impact the defendant's ability to investigate and defend against the charges. Proposed additional limitations on the use and public dissemination of online communications between the OCEs and defendant will not impede the defendant's ability to effectively use the materials. If some prejudice to the defendant were to become apparent at a later date, the protective can be modified by the court.

Nor would the public's access to information be compromised by the proposed protective order, which limits from its general requirements any materials that become part of the public record at a trial or evidentiary hearing. Protective orders covering all materials produced in discovery are appropriate in certain circumstances. Indeed numerous judges in this courts in this jurisdiction have issued uncontested protective orders in criminal cases using similar orders.[5] Those provisions are reasonable and would impose minimal or no burden on the defendant, and certainly no prejudice, particularly when weighed against the great public interest in preventing acts of terrorism both at home and abroad. Additionally, the protective order, among other things, allows any party to seek modification of the order at any time if such a need arises.

---

[5] See, U.S. v. Abdul Khabir Wahid, CR-17-00360-PHX-JJT (Docs. 21 and 38); U.S. v. Mohamed Abukar Aden, CR-19-01233-PHX-MTL (Doc. 19); and U.S. v. Ahmed Mahad Mohamed, et al, CR-19-02162-TUC-JGZ (Doc. 43).

Similarly, the issuance of the proposed modified protective order would not place a prior restraint on defendant's First Amendment rights. *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir.1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private."); *see also* Richard L. Marcus, *Myth and Reality in Protective Order Litigation*, 69 Cornell L.Rev. 1, 37 (1983) ("[T]here simply is no tradition of public access to discovery").

"In the end, there is no presumptive right of access to the discovery materials provided in this case." *See Smith*, 985 F. Supp. 2d at 520. (Thus, "an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." citing *Seattle Times Co.*, 467 U.S. at 33). The Supreme Court has held that "continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." *See Seattle Times Co.* 467 U.S. at 32.

## **CONCLUSION**

For these reasons, and others presented at any hearing, the United States respectfully urges the Court to issue the proposed protective order.

Respectfully submitted this 10th day of December, 2020.

        MICHAEL BAILEY
        United States Attorney
        District of Arizona

        */s/ David A. Pimsner*
        LISA E. JENNIS
        DAVID A. PIMSNER
        Assistant U.S. Attorneys

**Certificate of Service**

I hereby certify that on this 10th of day of December, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrant in this case:

Jami Johnson


*DAP/nh*
U.S. Attorney's Office