1
2
3
4

JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams, Suite 201
Phoenix, Arizona  85007
Telephone: 602-382-2700

5
6
7

JAMI JOHNSON
New York State Bar # 4823373
Asst. Federal Public Defender
Attorney for Defendant
jami_johnson@fd.org

8

IN THE UNITED STATES DISTRICT COURT

9

DISTRICT OF ARIZONA

10
11
12
13
14
15
16

United States of America,

Plaintiff,

vs.

Jill Marie Jones,

Defendant.

No.  CR-20-00634-PHX-DWL

DEFENDANT'S SUR-REPLY TO GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION FOR A PROTECTIVE ORDER

17
18
19
20
21
22
23
24
25

Defendant Jill Marie Jones ("Ms. Jones"), through undersigned counsel, hereby submits the following sur-reply to the government's reply to defendant's response to a motion for a protective order (Doc. 36) ("the reply" or "Rep."). The reply asks the Court to enter a protective order wholly different from the one sought in the government's original motion (Doc. 21) but fails to explain why this entirely new protective order is any more proper than the original. Indeed, it fails in the same way, for the same reasons, and to the same degree as did the government's original motion.

26
27
28

First, the revised protective order still vests in the government sole and unilateral authority to designate materials as "protected" based solely on amorphous, broad descriptions that fail to impart any real information about what, specifically, the government seeks to protect and therefore improperly usurps the

power of the court to determine what information is properly protected from disclosure. Second, the revised proposed protective order still fails to describe with sufficient particularly the documents it seeks to protect and still fails to articulate with specificity the harms that would arise from disclosure and therefore fails to establish good cause why a protective order should issue. Third, the revised proposed protective order still intrudes impermissibly on Ms. Jones' First Amendment rights by seeking to restrict her use and dissemination of information already in her possession, custody, or control prior to any disclosures at all by the government.

**I.     The Reply Fails to Establish why the Government, Rather than the Court Should Decide Which Materials Are Subject to Protection.**

The reply continues to insist that a blanket protective order—albeit one covering a somewhat more limited class of documents—is appropriate in this case but fails to cite any authority that would justify such an outcome. The government cites three cases nominally in support of the proposition that the government may be vested with such power over Ms. Jones' objection, but none actually supports that proposition. In two of the cases, *United States v. Lewis*, No. 16-300002-MGM, 2016 WL 778361 (D. Mass. Feb. 26, 2016) and *United States v. Worthen*, No. 17-cr-175, 2017 WL 3086062 (N.D. Cal. July 20, 2017), the defendant(s) stipulated to the entry of the blanket protective order so the scope of the government's authority was, unlike here, not in dispute. In the third case, *United States v. Smith*, 985 F. Supp. 2d 506, 523–24 (S.D.N.Y. 2013), such an order did issue but expressly *not* for the reason the government cites in the reply. Indeed, the *Smith* court expressly *rejected* the proffered rational relied upon by the government in this case, namely that amorphous and vaguely described "interests of third parties" justified issuance

of a protective order. *Id.* at 530 ("[T]he Government has not offered information about, among other things, the identities of the third parties, whether these other third parties are public officials or private citizens, which specific discovery materials would unfairly sully their reputation, and whether the conduct of these individuals would be proven at trial (which would be open to the public). Without this information, the Court cannot determine, for example, how much weight to give the interests of the third parties, whether redactions to the discovery might alleviate the Government's concerns, or instead, whether a blanket protective order would be the only way to protect the interests of the third parties . . . . Thus, as it currently stands, the Government's case for good cause is quintessentially one based on conclusory allegations and cannot be the basis for the protective order the Government seeks.") (internal citations omitted). The protective order in *Smith* issued because the government submitted an *ex parte* memorandum to the court identifying specific, ongoing criminal investigations that would be compromised by the revelation of the information in question and explained how. *Id.* at 531–32. Such specific, articulated, concrete justifications are entirely lacking here.

Nor does Ms. Jones's proposed ability to seek relief from the government's overbroad classifications by filing motions save the government's revised proposed protective order, nor make it less "cumbersome" or "waste[ful] of judicial resources." Instead, this proposal simply shifts to Ms. Jones the burden of litigating the justification for the government's classifications rather than leaving that burden where it properly lies—with the government. *See United States v. Carriles*, 654 F. Supp. 2d 557, 569–70 (W.D. Tex. 2009) ("The court agrees with the Defendant that requiring the Court's approval before Defendant may disclose protected material in preparation for his trial would needlessly impair [the opportunity to

3

present a complete defense.] Such a procedure would be time-consuming, expensive, and would essentially require Defendant to keep the court and Government on perpetual notice of his trial preparation-related activity.") The government provides no reason why Ms. Jones, rather than the government, should bear the burden of litigating the merits of the protections the government intends to impose.

**II.     The Reply Does Not Establish "Good Cause" for the Revised Proposed Protective Order.**

The revised proposed protective order fares no better in establishing "good cause" for the government to protect these vaguely described materials. The government suggests that the revised proposed protective order will protect only "OCE-Related Discovery Information" and suggests that protection is needed because dissemination could "adversely affect national security" (Rep. 2) and/or the "personal safety of FBI OCEs and their families" (Rep. at 7) but fails to explain what these materials are or how they might place anyone or anything at risk. Indeed, at least some of the materials appear to consist of "communications between the OCE and [the] defendant." (Rep. at 11). Defendant assumes that the government was not sharing national security information with her in these chats nor placing the personal safety of an FBI agent at risk in chatting with her and it is therefore entirely unclear how information that the government freely shared with Ms. Jones six months ago with no protections at all must now suddenly be protected. The reply does not enlighten.

Generalized assertions and naked speculation are insufficient to support a finding of "good cause." *Beckman Ind., Inc. v. Int'l Ins. Co.*, 966 F.2d at 476 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [relevant test for deeming materials protected under

4

the Federal Rules of Civil Procedure].”); *see also Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001) (To establish good cause, the party that seeks a protective order "must articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements.") The reply fails to explain either what, specifically, these documents are or how, specifically, they could be used to harm national security or to injure a third party. It has not therefore shown good cause.

### III.   The Reply Fails Meaningfully to Address Ms. Jones's First Amendment Interests.

As noted above, at least some of the material the government continues to seek to protect appears to consist of information already known to Ms. Jones— indeed already in her possession, custody, or control—because it consists of material generated by Ms. Jones herself during the course of her communications with the undercover agents. Certain other information, such as screen names and aliases used by the undercover agents in their communications with Ms. Jones, are already known to Ms. Jones and were known to her prior to her arrest. Ms. Jones already has this information. It was given to her by the government six months ago subject to no protections whatsoever with the goal of luring her into committing a crime. As things stand today, there is nothing that would prohibit Ms. Jones from discussing this information freely with anyone she chooses. The government however hopes that in "producing" this information to Ms. Jones it can retroactively restrict information it once freely disseminated. This is precisely the kind of unlawful restraint that requires "strict scrutiny" under the Constitution, and it is one the court should decline to impose.

The reply fails to address in any way 1) why Ms. Jones would not have a First Amendment right to freely disseminate information or materials lawfully

obtained by her and lawfully in her knowledge, possession, custody or control prior to their production in discovery or, in the alternative, 2) why the extraordinary remedy of a prior restraint should be imposed. The revised proposed protective order is therefore impermissible under the First Amendment.

## IV.    Conclusion

For the reasons set forth above, the government's revised proposed protective order should not issue.

Respectfully submitted:    December 22, 2020.

JON M. SANDS
Federal Public Defender

*s/Jami Johnson*
JAMI JOHNSON
Asst. Federal Public Defender