GARY M. RESTAINO
United States Attorney
District of Arizona
DAVID A. PIMSNER
Arizona State Bar No. 007480
KEVIN C. HAKALA
Colorado State Bar No. 41335
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona  85004
Telephone:  602-514-7500
Email: david.pimsner@usdoj.gov
Email: kevin.hakala@usdoj.gov
Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No.  CR-20-00634-PHX-DWL |
| Plaintiff, | **UNITED STATES' MEMORANDUM OF LAW PURSUANT TO THE CLASSIFIED INFORMATION PROCEDURES ACT AND MOTION TO DESIGNATE CLASSIFIED INFORMATION SECURITY OFFICER** |
| vs. | |
| Jill Marie Jones, | |
| Defendant. | |

The United States hereby files this memorandum of law regarding the Classified Information Procedures Act, 18 U.S.C. Appendix III ("CIPA"), to apprise the Court of the applicability of CIPA to matters relating to classified information that may arise in connection with the above-captioned matter both before and during trial. To assist the Court in handling any CIPA-related matters that may arise in this case, the government herein provides the Court with a detailed description of the procedures mandated by CIPA for protecting such classified information. In addition, the government requests that the Court enter the attached proposed order, appointing a Classified Information Security Officer ("CISO") in this matter.

//

//

## I.    OVERVIEW OF CIPA

CIPA, enacted by Congress in 1980, contains a set of procedures by which federal district courts rule on pretrial and trial matters concerning the discovery, admissibility, and use of classified information in criminal cases. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994). "Classified information," as referred to in CIPA, includes "any information or material that has been determined by the United States Government pursuant to an Executive order, statute or regulation, to require protection against the unauthorized disclosure for reasons of national security." 18 U.S.C. App. III § 1(a). CIPA's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996); *United States v. Sedaghaty,* 728 F.3d 885, 904 (9th Cir. 2013) (quoting S. Rep. No. 96-823, at 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4296) (Congress enacted CIPA "to help strengthen the enforcement of laws designed to protect both national security and civil liberties.").

The Supreme Court has long acknowledged the importance of protecting the nation's secrets from disclosure: "The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *CIA v. Sims*, 471 U.S. 159, 175 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam)); *accord see Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world."). Given this compelling interest, federal courts have recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir. 1973).

CIPA was enacted to enable district courts to evaluate potential classified information issues in criminal cases before trial, to prevent the problem of unanticipated disclosures of classified material. *See Sedaghaty,* 728 F.3d at 904; *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (CIPA was enacted "to prevent the problem of 'graymail,' where defendants pressed for the release of classified information to force the government to drop the prosecution."). CIPA provides district judges with a procedural framework "to rule on questions of admissibility involving classified information before introduction of evidence in open court [and] . . . permits the government to ascertain the potential damage to national security of proceeding with a given prosecution before trial." *Sarkissian*, 841 F.2d at 965 (quoting S. Rep. No. 96-823, at 1 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4297). The majority of CIPA's provisions set forth pretrial procedures to determine the relevance and admissibility of classified information, in order to eliminate surprise and the risk of unanticipated disclosures. *See id*.

CIPA neither creates any new right of discovery nor expands the rules governing the admissibility of evidence. *Sedaghaty*, 728 F.3d 903–04; *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."); *accord United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."); *United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc). Rather, CIPA applies preexisting discovery law in criminal cases to classified information and restricts the discovery of classified information to protect the government's national-security interest. *See Baptista-Rodriguez*, 17 F.3d at 1363-64; *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998); *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989) (noting that CIPA creates no new rules of evidence regarding admissibility, but rather mandates procedures that protect the government's privilege in classified information). *Sarkissian,* 841 F.2d at 965) (Congress intended CIPA to "clarify the court's power to restrict discovery of classified information"). Therefore, "[w]hile CIPA creates no new rule of evidence regarding admissibility, the procedures it mandates protects a government

privilege in classified information similar to the informant's privilege . . . ." *Yunis*, 867 F.2d 617 at 623.[1]

The government produces discoverable information to the defense in cases involving classified information, but the discovery of classified information must be actually "helpful to the defense of the accused." *Yunis*, 867 F.2d 617 at 621 (stating "classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege, but that the threshold for discovery in this context further requires that a defendant seeking classified information is entitled only to information that is at least 'helpful to the defense of [the] accused,'"). CIPA does not "expand the traditional rules of discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *accord United States v. McVeigh*, 923 F. Supp 1310, 1314 (D. Colo. 1996) ("CIPA does not enlarge the scope of discovery or of *Brady*."). The Ninth Circuit has held the "relevant and helpful" standard first established by *Yunis* applies to the discovery of classified information, as have numerous other Circuits. *See, e.g., Klimavicius–Viloria,* 144 F.3d at 1261; *United States v. Aref,* 533 F.3d 72, 79–80 (2d Cir. 2008); *United States v. Moussaoui,* 382 F.3d 453, 472 (4th Cir. 2004); *Varca,* 896 F.2d at 905; *United States v.*

---

[1] The D.C. Circuit recognized that the government's privilege concerns not merely the content of any particular conversation, but the privilege often involves the government's ability to collect the information:

> [T]he government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all.  Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods.  Implicit in the whole concept of an informant-type privilege is the necessity that information-gathering agencies protect from compromise "intelligence sources and methods."  The Supreme Court has expressly recognized the legitimacy of this concern in construing the National Security Act of 1947, 61 Stat. 498, 50 U.S.C. § 403(d)(3), in *CIA v. Sims,* 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985).

*Yunis*, 867 F.2d at 623. Thus, courts understand the need to protect the sources and methods of collecting information as well as the information itself.

4

1    *Amawi*, 695 F.3d 457, 475 (6th Cir. 2012) (quoting *Yunis* and finding the classified

2    information at issue not "relevant and helpful to the defense."); *United States v. Hanna*,

3    661 F.3d 271, 295 (6th Cir. 2011) (affirming the trial court's *ex parte* and *in camera*

4    decision that classified information was not actually helpful to the defense).

5          District courts employ a three-step analysis to review the Government's CIPA

6    Section 4 submissions requesting the court's approval to withhold, or "delete," discovery

7    of classified information. First, the Court must determine whether the classified

8    information is discoverable under the traditional rules of criminal discovery. *Sedaghaty*,

9    728 F.3d at 904 (citing *United States v. Rewald*, 889 F.2d 836, 847-48 (9th Cir. 1989)).

10   Second, the Court must assess whether the Government has properly asserted a privilege

11   over the classified information. *Id.*[2] Third, the Court must consider whether the classified

12   information at issue is both "relevant and helpful to the defense of an accused." *Id.* (quoting

13   *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)). Classified information that is not

14   relevant and helpful to the defense may be "deleted," that is, withheld from discovery;

15   classified information that is relevant and helpful to the defense must be produced to the

16   defense, and the Government may make such productions through substituted summaries,

17   if the statement or summary of the classified information would provide the defendant with

18   

---

19   [2] To invoke CIPA's procedures under Section 4, the government must establish that the information is

20   indeed classified. *See Klimavicius-Viloria*, 144 F.3d at 1261; *Sarkissian*, 841 F.2d at 965-66; *Mejia*, 448 F.3d at 456. To do so, the government ordinarily submits a declaration executed by an official with

21   classification review authority (1) describing the reasons for the classification of the information at issue; and (2) setting forth the potential harm to national security that could result from its disclosure. *See United

22   States v. Libby*, 429 F. Supp. 2d 18, 22 (D.D.C. Apr. 5, 2006), *amended by United States v. Libby*, 429 F.Supp. 2d 46, 47 (D.D.C. May 3, 2006). Courts have recognized that the determination of whether to

23   classify information and the proper classification thereof is a matter committed solely to the Executive Branch: "The Government . . . may determine what information is classified. A defendant cannot challenge

24   this classification. A court cannot question it." *Smith*, 750 F.2d 1215 at 1217 (4th Cir. 1984) *vacated on other grounds*, 780 F.2d 1102 (4th Cir. 1985); *See also United States v. Abu Ali*, 528 F.3d 210, 253 (4th

25   Cir. 2008) ("[W]e have no authority [] to consider judgments made by the Attorney General concerning the extent to which information in issue here implicates national security."); *United States v. El-Mezain*, 664

26   F.3d 467, 523 (5th Cir. 2011) (declining to "second guess . . . the Government's determination of what is properly considered classified information."); *United States v. Musa*, 833 F.Supp. 752, 755 (E.D. Mo 1993)

27   ("The determination whether to designate information as classified is a matter committed to the executive branch.").

28

1   "substantially the same ability to make his defense as would disclosure of the specific
2   classified information." *Id.* (citing 18 U.S.C. App. III § 6(c)(1)).

3        A.    Section 1—Definitions

4        Under CIPA, and as set forth above, "classified information" includes any
5   information or material determined by the United States Government to require protection
6   against unauthorized disclosure for reasons of national security. 18 U.S.C. App. III § 1(a).
7   "National security" means the national defense and foreign relations of the United States.
8   *Id.* § 1(b). *See also* Executive Order 13,526 (defining classified information).

9        CIPA applies equally to classified testimony and classified documents. *See e.g.,*
10  *United States v. Lee*, 90 F. Supp. 2d 1324, 1326 n.1 (D.N.M. 2000) (citing *United States v.*
11  *North*, 708 F. Supp. 399, 399-400 (D.D.C. 1988)); *Kasi v. Angelone*, 200 F. Supp. 2d 585,
12  596-97 (E.D. Va. 2002) (applying CIPA to classified testimony).

13       B.    Section 2—Pretrial Conference

14       Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or
15  information, any party may move for a pretrial conference to consider matters relating to
16  classified information that may arise in connection with the prosecution." 18 U.S.C. App.
17  III at § 2. Once a party files such a motion, Section 2 states that the district court "shall
18  promptly hold a pretrial conference to establish the timing of requests for discovery, the
19  provision of notice required by Section 5 of [CIPA], and the initiation of the procedure
20  established by Section 6 of [CIPA]." *Id*. During the pretrial conference, district courts
21  generally establish the trial schedule for the case, including the timing of discovery requests
22  by the defense, the defense's pretrial notice to the United States under CIPA Section 5
23  whereby the defendant identifies an intent to disclose classified information, if any, and
24  explaining the need for such a disclosure, and hearings concerning the use, relevance, and
25  admissibility of classified information pursuant to CIPA Section 6. *Id*.  In addition, the
26  court may consider any matters that relate to classified information or that may promote a
27  fair and expeditious trial. *Id.*

28

No substantive issues concerning the use of classified information are to be decided in a Section 2 pretrial conference. *See* S. Rep. No. 96-823, at 5-6, reprinted in 1980 U.S.C.C.A.N. 4294, 4298-99 (96th Cong. 2d Sess.). To foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant, or his attorney, at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney. *See* 18 U.S.C. App. III § 2.

C.     Section 3—Protective Order

CIPA Section 3 mandates that federal district courts issue a protective order upon motion by the United States to protect against the improper disclosure of any classified information produced by the government to the defense. *Id*. § 3. Section 3 was intended "to codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders," *Pappas*, 94 F.3d at 801, as well as to supplement the Court's authority under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders in connection with the discovery process.[3] In contrast to Rule 16(d)(1)'s discretionary authority, however, Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution, *e.g. Brady* and Jencks material." *Id*.[4]

D.     Section 4—Protection of Classified Information During Discovery

Both CIPA § 4 and Rule 16(d)(1) of the Federal Rules of Criminal Procedure expressly authorize the United States to submit *ex parte* motions seeking an *in camera* review of classified information that may be potentially discoverable in a federal criminal case. Section 4 of CIPA expressly authorizes federal district courts to deny, or otherwise

---

[3] Rule 16(d)(1) provides in relevant part that "at any time the court may, for good cause, deny, restrict or defer discovery or inspection, or grant other appropriate relief."

[4] Notably, possession of a security clearance does not automatically entitle its possessor to access classified information. *United States v. Daoud*, 755 F.3d 479, 484 (7th Cir. 2014) *supplemented*, 761 F.3d 678 (7th Cir. 2014) and *cert. denied*, No. 14-794, 2015 WL 731943 (U.S. Feb. 23, 2015). Without a "need-to-know," a defense counsel's security clearance does not allow him or her access to classified information. *Id.* In addition, the Government's interest in maintaining the confidentiality of classified information is not diminished because defense counsel possesses a security clearance to review classified material. *El-Mezain*, 664 F.3d at 568.

restrict, discovery of classified documents and information in the possession, custody, or control of the United States. 18 U.S.C. App. III § 4; *see e.g. United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998); *Yunis*, 867 F. 2d at 619-625. Similarly, the Federal Rules of Criminal Procedure provides, in pertinent part, that district courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The legislative history of CIPA makes clear that Section 4 was intended to clarify the district court's power under Rule 16(d)(1) to deny, or restrict, discovery to protect national security. *See* S. Rep. No. 96-823 at 6, 1980 U.S.C.C.A.N. at 4299-4300; *see also Aref*, 533 F.3d at 78-79; *Smith*, 780 F.2d at 1110 (holding the defendant's right to discovery must be balanced against public's interest in nondisclosure); *United States v. Pringle*, 751 F. 2d 419, 427 (1st Cir. 1985).

Section 4 provides that a district court:

> upon a sufficient showing may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The Court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

18 U.S.C. App. III § 4. Like Federal Rule of Criminal Procedure 16(d)(1), Section 4 provides that the government may demonstrate the use of alternatives to be warranted through an *in camera*, *ex parte* submission to the court. *Id*.; *see also United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2nd Cir. 2010); *Aref*, 533 F.3d at 81; *Yunis*, 867 F.2d at 622-23; *Sarkissian*, 841 F.2d at 965; *Pringle*, 751 F.2d at 427. In essence, Section 4 allows the United States to request *ex parte* and *in camera* review of its decisions regarding the discoverability of classified information and, if determined to be discoverable, whether government-proposed summaries, or substitutions, would place the defendant in substantially the same position as the underlying classified information. *See*, *e.g.*, *Amawi*,

695 F.3d at 472-473 (stating ". . . every court that has considered this issue has held that CIPA permits *ex parte* hearings."); *United States v. Hanna*, 661 F.3d at 295; *Libby*, 429 F. Supp. 2d at 22, *amended by United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. May 3, 2006). If so, district courts issue orders approving of the government-proposed summaries and substitutions, which the government then would produce to the defense.[5] For example, the government may request that the Court approve of the government's decision to deny discovery of a classified document in its entirety pursuant to Section 4 because the document is not discoverable under the relevant legal standard. *Amawi*, 695 F.3d at 472-73; *Hanna*, 661 F.3d at 295-96. In the alternative, the government may file a motion under Section 4 to delete specific classified information from a document that otherwise contains discoverable information, or to substitute an unclassified summary, in lieu of the underlying classified document. *Id*. The government's Section 4 filings, including all attachments, must remain *ex parte* and *in camera*, under seal, and preserved in the record to be made available to the appellate court in the event of an appeal. 18 U.S.C. App. III § 4.

E.    Sections 5 and 6—Procedure for Cases Involving Classified Information Possessed by the Defendant

Sections 5 and 6 of CIPA apply when a criminal defendant who already possesses classified information seeks to disclose such information during the course of a trial, or pretrial proceeding. *See*, *e.g.*, *Baptista-Rodriguez*, 17 F.3d at 1363; *Sarkissian*, 841 F.2d at 965-66; *United States v. Collins*, 720 F.2d 1195, 1199-1200 (11th Cir. 1983). Section 5 requires the defendant to provide timely written notice to the court and the government describing any classified information that the defendant reasonably expects to disclose during any pretrial, or trial, proceeding. *See* 18 U.S.C. App. III § 5(a). The defendant must

---

[5] As set forth above, the government's discovery review of classified information is consistent with Rule 16, *Brady v. Maryland* (373 U.S. 83 (1963)), *Giglio v. United States* (405 U.S. 150 (1972)), the Jencks Act, and other discovery requirements. The government will produce in original form or through an appropriate summary or substitution, any information that is relevant and actually helpful to the material preparation of the defense. *See*, *e.g.*, *Amawi,* 695 F.3d at 472-473*; Hanna,* 661 F.3d at 295.

provide notice "within the time specified by the court, or where no time is specified, within thirty days prior to trial." *Id*. Although the description of the classified information may be brief, it must be particularized and set forth the specific classified information that the defendant reasonably believes to be necessary for the defense. *See Collins*, 720 F.2d at 1199. The defendant must provide formal notice under Section 5 even if the government knows the defendant may assert a defense involving classified information. *See United States v. Badia*, 827 F.2d 1458, 1465-66 (11th Cir. 1987).

Section 5 specifically prohibits the defendant from disclosing any classified information until after (1) providing notice, (2) allowing the government to seek a determination of the use, relevance, and admissibility of such information under Section 6, and (3) the time for any interlocutory appeal permitted under Section 7 expires. 18 U.S.C. App. III § 5(a). If the defendant fails to provide the requisite pretrial notice, the court may prohibit the disclosure of the classified information by the defense, and it may prohibit the defendant from examining any witness with respect to such information. *Id*. § 5(b).

After the defendant files notice under Section 5 of CIPA, the government may request that the court conduct a hearing to make "all determinations concerning the use, relevance or admissibility" of the defense-noticed classified information. 18 U.S.C. App. III § 6(a). Upon such a request, the court *shall* conduct such a hearing, and it must conduct the hearing *in camera* if the Attorney General certifies to the court that a public proceeding may result in the disclosure of classified information. *Id*. Prior to the hearing, the government must first provide the defendant with notice of the classified information that will be at issue. *Id*. § 6(b)(1). If the particular information previously was not available to the defendant, the government may, with the court's approval, provide a generic description of the material to the defendant. *Id*. The court also may order the government to provide the defendant with "details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing." *Id*. § 6(b)(2).

If the government requests a hearing before the proceeding at which the defendant expects to disclose the classified information, the court must issue a ruling before the proceeding commences. *Id*. § 6(a). The district court's ruling must be in writing and should set forth the basis for its determination as to each item of classified information. *Id*. After an *in camera* hearing, if the district court determines that the classified information at issue may not be disclosed during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal. *Id*. § 6(d). If the court finds the classified information useful, relevant, or otherwise admissible, the government may ask for the court to approve of (1) the government-proposed substitution of a statement admitting relevant facts that the specific classified information would tend to prove, or (2) the government-proposed substitution of a summary of the classified information. *Id*. § 6(c)(1).

If the court denies the government's motion for substitution under Section 6(c), CIPA permits the government, by affidavit from the Attorney General, to object to the disclosure of the classified information at issue. *Id*. § 6(e)(1). Upon the government's filing of the Attorney General's affidavit, the court "shall order that the defendant not disclose or cause the disclosure of such information," and it may impose a sanction against the government to compensate for the defendant's inability to present proof of the specific item of classified information. *See* S. Rep. 96-823 at 9, 1980 U.S.C.C.A.N. at 4302-3. Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific counts, finding against the government on an issue to which the classified information related, striking or precluding testimony of a witness, or dismissing the indictment. 18 U.S.C. App. III § 6(e)(2). An order imposing a sanction shall not take effect until the government has the opportunity to appeal the order under Section 7, or thereafter withdraw its objection to the disclosure of the information. *Id*.

Whenever the court rules at a Section 6(a) hearing that classified information is admissible, the court must require the government to provide the defendant with information it expects to use to rebut the classified information, "unless the interests of fairness do not so require." *Id*. § 6(f). The court may place the United States under a

11

continuing duty to disclose rebuttal information. *Id*. If the government fails to comply, the court may exclude the rebuttal evidence and prohibit the government from examining any witness with respect to such information. *Id*.

F.     Section 7—Interlocutory Appeal

Section 7 permits the United States to take an expedited interlocutory appeal to the appellate court if the district court (a) authorizes the disclosure of classified information, (b) imposes sanctions for nondisclosure of classified information, or (c) refuses to issue a protective order sought by the United States to prevent the disclosure of classified information. *Id*. § 7. If an appeal is taken, the court must not commence the trial until the appeal is resolved. *Id*. Such an appeal and decision does not affect the defendant's right to lodge a subsequent appeal upon conviction (if any) of an adverse ruling by the trial court. *Id*. § 7(b).

G.     Section 8—Procedures Governing the Introduction of Classified Information at Trial or at Pretrial Proceeding

Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence. *Id*. § 8. Specifically, Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status. This provision allows the classifying agency, upon completion of the trial, to decide whether information has been so compromised that it could no longer be regarded as classified. *See* S. Rep. No. 96-823 at 10, 1980 U.S.C.C.A.N. at 4304.

Section 8(b) permits the court to order admission into evidence of only a part of a document when fairness does not require the whole document to be considered by the factfinder. The purpose of this provision is to clarify Federal Rule of Evidence 106, known as the rule of completeness, in order to prevent unnecessary disclosure of classified information. *Id*. at 10-11, 1980 U.S.C.C.A.N. at 4304.

Section 8(c) provides a procedure to address the problem presented at a proceeding when the defendant's counsel asks a question, or embarks on a line of inquiry, that would require the witness to disclose classified information. *Id*. at 11, 1980 U.S.C.C.A.N. at 4304.

Specifically, under Section 8(c), the government may object to any question, or line of inquiry, that may require the witness to disclose classified information not previously held to be admissible. 18 U.S.C. App. III § 8(c). Following an objection, the court "shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information." *Id*. In effect, this procedure supplements the notice provision under Section 5 and the hearing provision in Section 6(a) to cope with situations that cannot be handled effectively by those sections, such as where the defense does not realize that the answer to a given question will reveal classified information. S. Rep. No. 96-823 at 11, 1980 U.S.C.C.A.N. at 4304-5.

H.     Section 9—Security Procedures

Section 9 requires the Chief Justice of the United States, in consultation with other executive branch officials, to prescribe rules establishing procedures to protect classified information in the custody of federal courts from unauthorized disclosure. 18 U.S.C. App. III § 9(a). Security Procedures established pursuant to this provision are codified directly following Section 9 of CIPA.

I.     Section 9A—Coordination Requirement

Section 9A requires an official of the Department of Justice and the appropriate United States Attorney to provide timely briefings of the fact and status of a prosecution involving classified information to a senior official of the agency in which the classified information originated. *Id*. § 9A(a).

J.     Section 10—Identification of Information Related to the National Defense

This section applies in criminal prosecutions in which the government must prove as an element of the crime charged that certain material relates to the national defense, or otherwise constitutes classified information. *See* S. Rep. 96-823 at 11-12, 1980 U.S.C.C.A.N. at 4305. In such a circumstance, Section 10 requires the government to inform the defendant of which portions of the material it reasonably expects to rely upon to prove the classified-information element of the crime. 18 U.S.C. App. III § 10. Section 10 likely will not be applicable in this case.

13

K.      Sections 11-15 - Miscellaneous Provisions

The remaining sections of CIPA contain various miscellaneous provisions. Section 11 provides for amendments to Sections 1 through 10 of CIPA. Section 12 requires the Attorney General to issue guidelines regarding the exercise of prosecutorial discretion over cases in which classified information may be revealed and requires preparation of written findings when prosecution of such cases is declined. Section 13 requires the Attorney General periodically to report such declination decisions to Congress and, when necessary, to report on the operation and effectiveness of CIPA. Section 14 identifies the senior officials to whom the functions and duties of the Attorney General under CIPA may be delegated.  Section 15 provides the effective date of CIPA.

**II.      REQUEST FOR PRETRIAL CONFERENCE UNDER SECTION 2 OF CIPA**

The government is in the process of identifying and reviewing material that is currently classified.  Some of this material may be subject to disclosure in advance of trial and could raise issues of national security that the Court will need to address under CIPA. Accordingly, pursuant to Section 2 of CIPA, the United States respectfully requests that the Court schedule a pretrial conference to establish a discovery and motion schedule relating to any classified information.[6]

At the Section 2 pretrial conference, the government will provide an estimate of the time necessary to conduct a complete review and identify any potentially relevant classified information.  Based on that estimate, the government will provide a proposed schedule for the filing of motions under CIPA Section 3 relating to protective orders, and under CIPA Section 4 relating to the deletion, substitution, or disclosure of classified information. Because of the classified nature of certain information, the government will be unable to provide the court with specifics in open court (e.g., the type of information at issue, the

---

[6]     As set forth above, under Section 2 of CIPA, any party may move for a pretrial conference to "consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. 3, § 2. Once such a motion is filed, the Court "shall promptly hold a pretrial conference." *Id.* At the conference, the Court should "establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id.*

14

amount of information at issue, the period of time when such information was collected, whether agencies other than the FBI are involved, etc.).  If the Court so directs, the government will be prepared to present this information to the Court orally in an *ex parte*, *in camera* hearing.  As previously noted, courts have consistently held that *in camera*, *ex parte* submission to a district court in matters involving national security are proper. *See, e.g., United States v. Mejia*, 448 F.3d 436, 455 (D.C. Cir. 2006); *United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003); *Pringle*, 751 F.2d at 427.

## III.   MOTION TO DESIGNATE CLASSIFIED INFORMATION SECURITY OFFICER

Additionally, in anticipation of the issues that may be raised in this case, the government requests that the Court designate a Classified Information Security Officer (CISO) pursuant to Section 2 of the Revised Security Procedures established under Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States and promulgated pursuant to Section 9 of CIPA. That section provides that:

> In any proceeding in a criminal case or appeal therefrom in which classified information is within, or is reasonably expected to be within, the custody of the court, the court will designate a 'classified information security officer.' The Attorney General or the Department of Justice Security Officer will recommend to the court a person qualified to serve as a classified information security officer. This individual will be selected from the Litigation Security Group, Security and Emergency Planning Staff, Department of Justice, to be detailed to the court to serve in a neutral capacity.

Revised Security Procedures established under Pub. L. 96-456, 94 Stat. 2025 § 2.   *See* CIPA, Pub. L. 96-456 § 9, 94 Stat. 2025 (1980) (found in the statutory notes to § 9). Classified Information Security Officers[7] designated pursuant to this process are responsible for the security of all classified information in the court's custody and assist the court with appropriate security clearances for court staff as well as the handling and

---

[7]  In the original Security Procedures, the title of the position was "Court Security Officer." In the revised security procedures promulgated by Chief Justice Roberts, the position is now known as "Classified Information Security Officer," commonly referred to as a "CISO."

storage of any classified materials including any pleadings or other filings related to CIPA proceedings. *Id*.

As set forth in the attached proposed order, the government recommends that the Court designate Mr. Connor B. Morse as the CISO for this case, to perform the duties and responsibilities prescribed for CISO's in the Security Procedures promulgated by the Chief Justice. Mr. Morse is an employee of the Litigation Security Group of the U.S. Department of Justice with demonstrated competence in security matters. The Department of Justice Security Officer will certify that Mr. Morse holds all proper security clearances by separate written correspondence officially nominating Mr. Morse as CISO. The government further requests that the Court designate the following persons as alternate CISOs, to serve in the event Mr. Morse is unavailable: Daniel O. Hartenstine, Patrice E. King, Daniella M. Medel, Matthew W. Mullery, Carli V. Rodriguez-Feo, Harry J. Rucker, and Winfield S. "Scooter" Slade. Each of these alternate CISOs are also from the Litigation Security Group of the Department of Justice and hold appropriate security clearances.

## IV.   **CONCLUSION**

The United States anticipates that issues relating to classified information may arise in connection with this case. Accordingly, the United States respectfully provides this memorandum of law to provide the Court with a detailed description of CIPA's procedures to address issues related to classified information to protect any such classified information before, during, and after trial in this case. For the foregoing reasons, pursuant to CIPA Section 2, the government respectfully requests that the Court schedule a pretrial conference to address scheduling matters in light of the existence of classified materials.

//

//

//

//

//

1    In addition, the government respectfully requests that the Court enter the attached

2    proposed order, appointing a Classified Information Security Officer ("CISO") and

3    alternate CISOs in this matter to assist the Court and court personnel in any further matters

4    related to CIPA.

5    Respectfully submitted this 28th day of October, 2022.

6

7                                          GARY M. RESTAINO
                                           United States Attorney
8                                          District of Arizona

9                                           /s/ David A. Pimsner

10                                         DAVID A. PIMSNER
                                           KEVIN C. HAKALA
11                                         Assistant U.S. Attorneys

12

13

14                        **CERTIFICATE OF SERVICE**

15    I hereby certify that on this 28th day of October, 2022, I electronically transmitted the

16    attached document to the Clerk's Office using the CM/ECF System for filing and

17    transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this case.

18

19    Mark Rumold
      Jane McClellan
20    Federal Public Defenders

21

22     s/ David A. Pimsner

23    U.S. Attorney's Office

24

25

26

27

28

17